Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Bowie presiding along with Justice Barbaras and Justice Vaughn. The first case this morning is 522-0418. Wedemeyer v. Estate of Colleen S. Bennett et al. Arguing for the appellant is Zane Cagle. Arguing for the appellee is Scott Hofer. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. How are you all? Good morning. Great. Thanks. Good. I believe we have and before we get started, obviously, we address a couple of procedural things. We sent out the order for the supplemental briefing. I'm looking at those. I believe we have all the supplemental briefing in. I believe Mr. Cagle filed a motion to correct the name and then I think yesterday evening, we received that objection to the motion from Mr. Hofer. That's correct, I believe? Yes. Okay. So, obviously, we have all that and I don't know how, Mr. Cagle, you want to start, but obviously, I think my opinion and I'll also turn to my colleagues. I believe the jurisdiction issue needs to be addressed probably first. I don't know how you were planning on proceeding today, but that's I think how we would... I agree with you, Judge. Is that all right with you all, Justice Barbaras and Yes. All right. So, with all that being said, Mr. Cagle, go right ahead. Okay. To address the subject matter jurisdiction first, first of all, let me please the court. This case was originally filed and when we filed, we named Ben Bennett and it relates to a motor Bennett. As a result of the motor vehicle collision, she perished at the crash site. Plaintiff opened up an estate within one year of the decedent's death. Ben Bennett was originally named as an individual in this case. Later on, under negligent trust claim, later on in the case, he was dismissed without prejudice from the case. The parties litigated this and the court granted a summary judgment after a bench trial on the issue of settlement about four to five weeks prior to the scheduled jury trial. During that time, the parties litigated this case and it was known that Mr. Bennett was representative of this state. In fact, defendant's counsel filed an affirmation and affidavit with the trial court. If you can find it, see 7 21 that they indicated that Ben Bennett was a party and that's reason your honor honors. We've asked that this is a simple misnomer that we ask that it be the estate of Colleen Bennett and personal representative, her husband Ben Bennett. The parties have acted to this. This is exactly what the misnomer statute was created for is in situations in which, you know, we don't have a wrongly named party. It's just, we just misnamed it and that we believe that that's proper. The statute allows that even occur after judgment. We'd ask the court to do that. Obviously, if the, if the trial court, if this court doesn't have subject jurors, subject matter jurisdiction, neither did the trial court and we'd ask that it be remanded back to the trial court for determination whether or not what needs to be done and whether or not that they need to have subject matter jurisdiction. Judge Vaughn or Justice Barberis, have any questions on the jurisdiction issue before Mr. Cagle maybe moves on to his other arguments? I have a question. Even in the motion you filed yesterday, I think it was or maybe Monday to correct the name, you still list the name. The name you're asking to correct it to is still Ben Bennett. It's not Ben Bennett as independent administrator. It's still just Ben Bennett. We'd ask it to be Ben Bennett as administrator, your honor. If that was, that was a missed thing. I'm sorry. I just got back from a month trip from Japan and tried to throw it together and I'm sorry if I've misstated that. It obviously needs to be as representative. As we have an estate opened in Randolph County and in this action, my client has creditor. There is an estate open which is reflected in the record and we'd ask that it be reflected as such here. I may have misspoke. It may say that in one part it just says correct the name to Ben Bennett at the very end and the last paragraph it does say Ben as administrator, so I may have misspoken there. How does this relate back in terms of statute of limitations? I know you're saying this is a misnomer, but if we don't agree that it's a misnomer, how does it, how do you have jurisdiction or how do we have jurisdiction? How do you have a viable claim if the estate being a separate entity from Mr. Bennett has never been served properly? Has the statute elapsed? And I understand that concern and I think we addressed that well in our supplemental brief. I believe it does relate back and the case law supports it does because there has been an estate open. Mr. Bennett has been served. He was originally. No, you know, let me stop you. I agree with you. If we find that it's a misnomer, but if we find that it's not a misnomer. Oh, if you find that it's not a misnomer, if you find it's not a misnomer, then I guess that the statute has ran. It's to your statute. Obviously it's ran judge. Okay. Anything else judges before Mr. Cagle moves on? All right. Thank you, Mr. Cagle. The issue presented, which we brought this appeal was, was the court entering a order after the bench trial in March the 18th, 2022, holding that there was a settlement agreement. We believe that the trial court erred in entering such an agreement because the uncontradicted evidence shows that Geico was added as a release to the, to the settlement agreement. And that was never offered. And as such constituted the counteroffer is the court well knows once there is a counteroffer, it kills the offer. We also appealed on whether or not that the trial court erred in entering that there was a settlement agreement because the correspondence from Geico on July 30th, 2019 failed to provide the assurance of proof, which is a condition proceeding to the plaintiff that the fact the $25,000 was in fact the policy limits. And the third point, which we appeal on is the trial court erred in finding an enforceable settlement agreement was reached by clear convincing evidence because there was no meeting of the minds and material terms of plaintiff's 2019 offer were not met. And the party, the conduct of the parties indicate as such. Um, this case factual background, uh, on July the 29th, 2019 plaintiff's counsel faxed a correspondence to Geico insurance and said that they would agree to execute a release of liability for your insured and your insured's estate. If they agreed to play the applicable policy limit subject to proof on the next day, Geico responded with settlement offer indicating that a check would be coming. Um, and then later we had an issue whether or not a fax was received or not. Uh, but what is undisputed is, is that the released fax the next day stated that was included that release in favor of discharge, discharge Ben W. Bennett and the estate of Colleen S. Bennett and Geico casualty insurance company. Simply at the end of the day, this is a counteroffer and there can't be an offer. Uh, the defendant has argued in this case that is immaterial term, adding themselves through the release, uh, at the bench trial, the undisputed evidence showed that they, that plaintiff's offer never included Geico, uh, and that they added themselves and this was a routine practice. And while looking back at this now, understanding that the players involved, it might not seem like a huge deal. However, at the time when we did this, we had no idea if there was additional policies available to the plaintiffs and in by executing it and allowing Geico to be a party, whether or not they would be giving up a claim for underinsured and murderist or even a secondary policy held by the, um, by Geico under her husband, under the negligent trustment claim we had at the time, uh, or just a separate one on a separate vehicle for the And, and that's why that there was never a meeting of the minds, is it related to plaintiff's July 29, 2009, 19 offer. At the end of the day, adding Geico was clearly a new term. It's clearly a material term and it's in direct contradiction to all of Illinois' law, which requires that, that any deviation from the offer is a counteroffer and it shall be a rejection. And that in context of considering that in this case, Geico and the defendant were asking for specific performance and that they were asking the court to enforce a settlement agreement and enforce a contract. They had to show with clear convincing evidence that did not occur at the bench trial and that that is not what's reflected in the record. The record clearly reflects that Geico added themselves to release, that the plaintiffs never offered to release Geico and as such, it was a counteroffer. And as such, there can never be a settlement agreement between the parties and the conduct of the parties clearly reflect that as we litigated this, plaintiff disclosed expert, defendant deposed all plaintiff's expert, defendant disclosed expert, plaintiff had deposed all of the defendant's experts, and we were really literally only a month from trial when the trial court granted this motion. And obviously, the trial court had issues with it because we initially both parties issued it, as reciprocal summary judgments, and the court found that they couldn't decide whether or not there was a settlement agreement. And then myself and opposing counsel went back to the court and said, well, you know, kind of have to decide one way or another. And that's why we eventually had the bench trial on March 18th. And that's when the court entered the order that's before this today. Simply put, we don't believe that there's any type of settlement agreement ever in this case. There's never been any executed release. The parties have litigated this case for years, knowing that Ben Bennett was representative and that we in the defendant and the plaintiff both knew who the parties were. Ben Bennett was actually a party originally in the case, as previously stated. And the clear convincing evidence is that there was no settlement agreement. We believe that setting aside the whole issue of the facts is back in court. You know, frankly, the court doesn't even need to address that issue. The simple fact is, the release included GEICO. The plaintiff never agreed to release GEICO. GEICO was added to the party. It doesn't meet the mirror image rule. It's a counteroffer. As a counteroffer, there can't be an enforceable agreement. There's no signed agreement. And that's our position, your honors. Thank you. Thank you, Mr. Cagle. Before we move on to opposing counsel, Justice Vaughn or Justice Barberis, do you have any questions? No questions. No, thank you. All right, Mr. Cagle, obviously, you're going to have your ability for rebuttal. Mr. Hooper, go right ahead. Thank you, your honor, and may it please the court. I'll start out addressing the subject matter jurisdiction and the misnomer issue because I believe strongly that those issues are dispositive. There's only one proper party here under the law, and that's Ben Bennett as an individual administrator of the estate. And Mr. Bennett was never named and never served in that capacity. I don't think any of that's a part of the record. There was a statement somewhere and a pleading, but there was never any allegation or contention levied against the proper entity, and that entity was never named and served. The complaint, both complaints, there was an original complaint and an amended complaint, made no allegation against Mr. Bennett in that capacity. He was only named in his individual capacity as a negligent entruster of the vehicle, as opposing counsel said. And Mr. Bennett in that individual capacity was, in fact, dismissed in August of 2021, and even the saving statute has expired. It expired back in August of 2022. So that means a proper party was never before the court. So this is not a misnomer situation or a relation back situation because due to the lack of subject matter jurisdiction, everything that happened below is a complete nullity, and the case is void ab initio. I mean, there's no proper entity or party in existence in any underlying action that a misnomer could apply to. So there just simply is no vehicle to apply a misnomer or any relation back. So we think that's dispositive. We think it's pretty clear under the law, and we think that the court should remand with an instruction to dismiss for lack of subject matter jurisdiction, but because, as counsel acknowledges, the statute of limitations has run or expired, the instruction to the trial court should also be to dismiss with prejudice. And if there are any questions about that, I'd like to answer them. Otherwise, I'm ready to move on to the more complicated part of the argument in the event the court does not dispose of this matter based on I think Blanton made an argument, or Pellant made an argument, that there's no surprise here. The idea of naming the right party at the right time and it not being a misnomer is that somebody is surprised that they've been hailed into court on something they had no idea about. How does that apply here when Mr. Bennett was, in fact, aware of being in court and knew the circumstances surrounding it, although, albeit, he was never named in his proper capacity? Completely irrelevant. He has to be named in his proper capacity. You know, we entered as defense counsel on behalf of the parties as they were named. We, you know, on behalf of him individually as a negligent entrustor and on behalf of the estate that was named, when they said, oh, they knew about this all along, they made an allegation in their petition about that he was appointed, and I believe our response was that we didn't know one way or the other, but they never did anything to name him as a party. It's irrelevant, is my response. We did, we certainly, nothing was done by anybody to, you know, foster them pursuing the wrong entity. You know, plaintiffs in control of their lawsuit, who they sue, how they sue them, and they chose to do what they did. Well, counsel, to kind of follow up on Justice Barberis, it sounds like the plaintiff may have named the wrong person, but the litigation began, it continued for a while, and the defense didn't catch it. They didn't bring the issue to the trial court to say they've sued the wrong person. You know, does that make a difference? It doesn't make a difference because subject matter jurisdiction can never be waived in any part of the proceeding, and the case law is crystal clear up to the Illinois Supreme Court on that. So, just so we, before you move on, Justice Vaughn or Justice Barberis, any other questions on this issue? No, this time, no questions. Okay. So, there are three points raised by the appellant, and I'm going to get to the meat of those in a second, but one thing that's really important here is that the appellant complains primarily of what are fact-driven issues that were all addressed in the bench trial, and this court is required to defer to the trial court as to reasonable inferences to be drawn from the evidence and is also required to affirm the underlying judgment unless it's against the manifest weight of the evidence, which the case law says is something akin to palpably erroneous or arbitrary and things of that nature, and we simply don't have that here. It's important to realize that this judgment followed a bench trial, and it was a bench trial after the trial court denied cross motions for summary judgment, as opponents in counsel said, because these were fact-driven issues, and there was a full presentation of evidence at the trial. There were numerous documents admitted. There were two live witnesses that were examined and cross-examined. There were opening statements robust closing arguments, and six days later, having taken all the evidence under advisement, the judgment was issued. There was also a motion to consider that was briefed and argued, so it's really important that this all arose out of a bench trial and what the standard of review is here. So in light of that, in that context, appellant's arguments basically boil down to three, which is this no mirror image acceptance argument and that there was a with its own name in it, and that they also argued Geico or that Geico didn't follow this subject-to-proof language that's in their demand letter. They also argued that the parties did not conduct themselves such that there was a meeting of the mind, so I'm going to take those in order, Your Honor. With respect to this mirror image acceptance or a counteroffer, it's important for this court to appreciate again that these questions involved fact issues and that they were resolved by the trial court with the trial evidence. The demand had three components to it. It said that they demanded the single-person policy limits of any and all policies which provide coverage. The trial evidence that was introduced at the bench trial was the adjuster from Geico saying that she did her due diligence and there was no found there was no other coverage and that she offered all the coverage, which was the Geico $25,000. She sent a letter on July 30, 2019, saying she sent two letters that date, and this is important. Her first letter said, we acknowledge your demand. Geico will agree to meet your demand and we will tender our $25,000 policy limit. One thing that was important at the trial court was the fact that two letters were acceptance. What Geico then did, Ms. Malloy was the adjuster, sent a second letter that included this release that had its own name in it, and what that is is a condition preceding to performance, right? Geico was then, after the contract was formed with a mirror image acceptance, Geico was offering up a form release because the demand never included a release, and they also sent on that same day the settlement check. So, the other two requirements, that payment be tendered by a certain date, that was done, that the payment be made out a certain way to the plaintiff and his counsel, that was done, and then after that was done, the adjuster called multiple times to Mr. Cagle and said, hey, where's the sign release? And he would never respond to her. And then when the check wasn't cashed, multiple written and verbal communications to Mr. Cagle, hey, how come you haven't signed the check? And Mr. Cagle always ignored her, and in fact, two times was connected to her and hung up on her when he realized who it was, and only after the deadline in his demand letter went by did he then take the position, well, look, you added Geico to this release, so you've rejected our settlement demand. So, what this court has to do is give deference to what the trial court did when it took that up in the form of a bench trial and give, you know, give the benefit to all reasonable inferences of the trial court, and the trial court determined that the demand was unconditionally accepted, mirror image acceptance, and that a contract was formed. So, the judgment should not be disturbed. The subject to proof argument is fully briefed, and maybe I won't spend a lot of time on that given the time because I don't think Mr. Cagle spent a lot of time on that, but when you look at the demand letter, when he says this is a demand and then he put in quotes or parentheses subject to proof in parentheses or end quote, we demand all the per person policy limits, his subject to proof really relates to his demand, and it's really kind of a stray phrase, but when the court denied the cross motions for summary judgment, the court said in its order, we're going to take up this subject to proof during a bench trial because I want to hear you. So, the court in Illinois addressed that and said she researched and found no other coverage. She sent a letter saying the $25,000 was the amount of coverage, and she represented that on GEICO letterhead, and the reason that's important is there's a tag at the bottom of the GEICO letter that says that it's sent pursuant to the Illinois Insurance Department penalty of making false representations. So, she's making these representations subject to penalty in that letter, and the court, after hearing all of that, concluded that GEICO's letter complied with this quote request for proof, and this court's required to give deference to the underlying inferences made by the trial judge, and so, the other point that was raised in the briefing and that Mr. Cagle focused on this morning is whether the parties conducted themselves with a meeting of the minds, and he's saying that because a settlement, one of the settlement requirements is demand, acceptance, consideration, and the parties demonstrating a meeting of the minds, and there was trial evidence on this part too, and the trial evidence demonstrated GEICO's mental process here when they sent back this mirror image acceptance, and it shows that by sending the release, which the release being a condition preceding to performance, they're trying to perform, and when Mr. Cagle didn't, client didn't sign the release, they kept calling saying where's the release, where's the release, and the significance of that is that it's demonstrating that the other party to this agreement, GEICO, is sitting there trying to perform, trying to perform, showing that it believes that a contract has been formed, and it's being ignored. They also pay the money, they write a check, and when the check's not cashed, they continually call and say where's, how come the check hasn't been deposited, and that she's ignored, and in fact, she's hung up on until the demand, time and demand expires. With respect to this purported delay too, it's important to note that, you know, GEICO appointed a defense lawyer who was me, and GEICO was in control of defense, and the things that they were insisting on is that we raised the fact that there was a settlement and a release, and we raised that as a defense throughout this case. We filed a motion for summary judgment, and we were on the but we had conducted discovery to bolster and develop that defense, and ultimately, it culminated in the trial court's decision. You know, if you want to look at the, this is why, when you look at whether the parties demonstrate a meeting of the minds, it's not subjective. It's an objective look by the court based on, you know, the offer and the demand, and of course, appellant wasn't acting like there was a settlement because their whole desire from the beginning was to try to orchestrate a situation where this insurance company, where they could claim the insurance company didn't mirror image except. In fact, in the demand letter that was July 29 of 2019, most of it was allegations of bad faith, saying if you don't do this, that, and the other thing, here's Illinois law on bad faith, and here's what's getting ready to happen. So, looking objectively at the trial evidence, which needs to be given deference to, there was a lot of evidence as to GEICO trying to perform after it had unconditionally accepted. And so, what the trial court did here, this judgment should not be disturbed under the applicable standard of care. The specific performance issue, I mean, the trial court did not address specific performance. The trial court's judgment did not order specific performance, so I don't really think that needs to be dealt with. I think the relief here is for this court. Obviously, we think the court should dismiss based on the subject matter jurisdiction argument, but if it gets to the meat of this argument, the court should simply affirm the trial court's judgment because the trial court's judgment found there's an enforceable settlement. So, in closing, your honor, the relief that we request is, first of all, I think the court should strike this misnomer motion. It wasn't preserved for appeal. The court should remain with an instruction to the trial court to dismiss for lack of subject matter jurisdiction with prejudice, given the expiration of the statute of limitations, but if it finds subject matter jurisdiction, it should, under the applicable standard of care, affirm the trial court's judgment. Thank you, your honor. Thank you, counsel. Before we move back to Mr. Cagle, Justice Vaughn or Justice Barberis, do you have any questions? I don't. All right. Thank you, counsel. Mr. Cagle, go right ahead with your rebuttal. Thank you, your honor. May it please the court. I think it's important to point out here that this is the settlement agreement, which is governed by contract principles, which is a matter of law, and so the review of whether or not a settlement agreement was entered into is de bono, and that is the review, and the proper review of this court is whether or not a settlement agreement was done, and it should be reviewed de bono. There was obviously finding of facts by the court, and as it relates to factual issues, the defendant's counsel is correct as far as the standard of review. However, again, the case law is very clear that we're dealing with it, whether the trial court held that there was a settlement agreement which occurred, and that's covered by contract, and that's a matter of law, and that's reviewed by de bono, and I won't beat a dead horse. I know you guys have briefed this and looked at a lot of the stuff. At the end of the day, you know, the GEICO, when they faxed it back, the initial fax to plaintiff's counsel did not include any proof in any type of statement that it was, in fact, the policy limits. The fact that they want to say GEICO does that, well, we say it, and so we're governed by the insurance, therefore it has to be like an affidavit or something, still doesn't meet the standard of mirror image and meeting of the minds. At the end of the day, we have a situation where GEICO insurance made a counteroffer. They added themselves to the release, they faxed it over, and now they want to come in and say, well, yeah, we met the terms of it, there's agreement, and the release was after the fact. Well, the release is, in fact, what they put in there and what they represented, and it goes directly to the heart of this entire matter, whether or not there was meeting of the minds, whether or not that the acceptance was a mirror image of the offer, and putting aside with a condition precedent of the subject of proof and all that, the simple fact is GEICO has added the release. Adding a party is not an immaterial term, especially at this point where we were at, not knowing what other policies existed for under GEICO, for either underinsured motorists or for specifically any of the claims against Mr. Bennett at the time the plaintiff may have had or against the decedent's estate. And as such, to say that it's an immaterial term, that dog don't clump. To address the other remaining issues raised by counsel, you know, I think it's thought that we had the right parties, and in the subject matter jurisdiction, we think misnomer was created for exactly this reason, and we believe that that's best for the court. If the court finds not, we'd ask that they remand it back to the trial court for determination of subject matter jurisdiction. Well, thank you, Mr. Cagle. Before we let counsel go for the day, Justice think the standard review is de novo, but that's only if there was no evidentiary hearing. If there was an evidentiary hearing, it's manifest way to the evidence of the March 18th was a bench trial to determine whether there was a settlement agreement. So, wasn't that an evidentiary hearing making the standard review manifest way to the evidence? I do, but I think that the court still gets to review it devono as it relates to whether or not that there was an actual settlement agreement, Judge. Thank you. Justice Barberis, anything? No. Well, thank you, counsel. Obviously, we're going to take this matter under advisement. We will issue an order in due course, and hope you gentlemen have a nice day.